IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. ALEX, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-09-1711 |
| vs. | : |
| | : (Judge Caldwell) |
| JEFFREY A. BEARD, SECRETARY OF CORRECTIONS, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.  *Introduction*

Anthony Alex, a convicted sex offender incarcerated at the Waymart State Correctional Institution (SCI-Waymart), in Waymart, Pennsylvania, filed this pro se action pursuant to 42 U.S.C. § 1983 alleging violations of his due-process and First Amendment rights because he is being denied contact with one of his victims, his eldest daughter, and participation in therapeutic programming. Named as defendants are the following Pennsylvania Department of Corrections (DOC) employees: the DOC Secretary Jeffrey Beard; SCI-Waymart Superintendent Joseph Nish; Unit Manager Joseph Grillo; Director of Bureau of Treatment Services Andres Prior Meintel; and Treatment Specialist Denise Bomba.

Defendants have filed a motion to dismiss.

II. *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The court is not limited to evaluating the complaint alone. It may also consider documents attached to the complaint and matters of public record. *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir. 2009)(citing *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).

While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), to survive a motion to dismiss a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving a motion to dismiss, the court conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a '"plausible claim for relief."'" *Id.* at 211 (quoted case omitted).

However, "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 160 L.Ed.2d 1081 (2007)(quoted case and internal quotation marks omitted), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*, 127 S.Ct. at 2200 (quoted case and internal quotation marks omitted). Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). But a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

III. *Background*

This background is based on the allegations of the complaint and admissions made by Alex in documents he presented in support of his opposition to the defendants' motion to dismiss.

-3-

According to Alex, SCI-Waymart is not following DOC Policies as SCI-Waymart "does not allow" sex offenders to enroll in the Sex Offender Program (SOP) "until 3 months before their minimums or after their minimums, which is denying the inmate parole." Doc. 1, Compl. at ¶¶ 3-4. SCI-Waymart is also denying inmates access to DOC policies. *Id.* at ¶ 5. Alex alleges that the DOC's Director of the Bureau of Treatment, Mr. Meintel, did not respond to Alex's March 30, 2009, letter regarding the way SCI-Waymart was running their programs. *Id.* at R. 4 and doc. 20, Pl.'s Opp'n Br. at RR. 40-42.[1] On March 18, 2009, when Alex was approximately twenty-one months away from his minimum sentence date, he claims his Unit Manager, Mr. Grillo, denied him access to therapeutic programming. *See* Doc. 20 at R. 41 and Doc. 1 at R. 4. On April 13, 2009, Mr. Grillo advised Alex that he was "not being denied [program participation]. You are still on the SOP wait list." Doc. 20 at R. 47. In July 2009, Alex was advised by his Counselor (a non-defendant) that programming does go by sentence minimum dates and that there are many inmates in need of the SOP. She also noted that Alex's minimum sentence date was December 2010 and that he was still on the SOP wait list. *Id.* at R. 52.

The DOC Handbook provides that inmates are not allowed to make calls to "a victim of the crime for which you are incarcerated, unless requested by the victim and approved of by the Facility Manager." Doc. 20 at R. 8. The DOC Handbook also

---

[1] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

identifies categories of "Prohibited Visitors" with whom an inmate cannot have visits without the approval of the Facility Manager. One such category is "any victim of the inmate (without prior approval)." *Id.* at R. 9. Alex asserts that SCI-Waymart is denying him "phone calls, visits and mail from [his] daughter Amanda." Doc. 1 at ¶ 6. In a letter written by Alex, he confirms that his daughter Amanda, "is one of [his] past victim[s] of [his] crime." Doc. 20 at R. 16. He claims prison officials "forced" him to sign a document acknowledging that he was to "have no contact until (sic) [his] daughter Amanda and it was at her request." Doc. 1 at ¶ 7. Doc. 20 at R. 15.

Staff at SCI-Waymart have repeatedly advised Alex not to attempt any contact with either of his daughters or his ex-wife or suffer disciplinary action. *See Id.* at RR. 29-30, and R. 54. Aside from these individuals, Alex has submitted documentation noting that in the past he received permission to write, telephone and/or visit with his brother, Jerome Alex, *Id.* at R. 12, and his son-in-law, John Kyle Fromille, *Id.* at R. 14. Alex also states that while housed at SCI-Camp Hill, he was "able" to communicate with his daughter Amanda. He offers his SCI-Camp Hill Authorized Visitor's List as evidence of this. *See Id.* at R. 14.[2]

---

[2] A careful review of the list reveals that he was not forthright when completing it The visitors form specifically asked him to identify whether any of the listed individuals were "involved in your current or past offense(s)" by placing a number "3" in the right hand column next to the intended visitor's name. While two of the six individuals he requested visitation privileges with were denied by SCI-Camp Hill officials, Alex did not notify SCI-Camp Hill officials when completing the form that his daughter was also "involved" in his offense as a victim, although Alex identified Amanda as his daughter on the list. *See* Doc. 20 at R. 14.

-5-

Alex accuses SCI-Waymart's Superintendent, Mr. Nish, of denying him "the privilege" of seeing his daughter Amanda on July 29, 2008, and of not enforcing DOC policies which resulted in denying him access to programming on March 24, 2009. Doc. 1 at R. 4. He also alleges that Secretary Beard refused to intervene and "correct the problem." *Id.* Yet, Alex does acknowledge that DOC staff responded on Secretary Beard's behalf and advised him that contact with former victims is left to the discretion of the Facility Manager and that while they could not comment as to the Facility Manager's reasoning for his decision on this matter, "it is noted that you have multiple convictions for the same offense with various members of your family being the victim's of your crimes." Doc. 20 at R. 46.[3]

Treatment Specialist Ms. Bomba is alleged to have advised Alex on March 24, 2009, that if he did not stop trying to contact his daughter Amanda, "she would see that [he] would not get into any of [his] programs and that [he] would max out [his] time." Doc. 1 at R. 4. When requested to put her statements in writing, Ms. Bomba refused to do so. *Id.*

---

[3] The Court takes judicial notice of Court of Common Pleas Northumberland County docket sheets for the following matters: *Commonwealth v. Alex*, No. CP-49-CR-0000197-2007; *Commonwealth v. Alex*, No. CP-49-CR-0000054-2002; and *Commonwealth v. Alex*, No. CP-49-CR-0000280-1999, all of which are available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/. A review of the docket sheet in *Commonwealth v. Alex*, No. CP-49-CR-0000197-2007 reveals that Alex plead guilty to Criminal Attempt - Incest, Endangering the Welfare of Children; and Indecent Assault of Person Less than 16 yrs of Age on January 28, 2008. He received a sentence of two and one-half to seven years' incarceration for these offenses. This is the sentence he is currently serving.

As relief, Alex seeks to be paroled at his minimum and placed in any required programming "on the outside" or to be monetarily compensated for each day he is required to remain in prison beyond his minimum sentence date to complete his programming. He also seeks monetary compensation for his daughter Amanda for the denial of "her rights."[4] *Id.* at R. 6. He also seeks an independent master to be appointed to review SCI-Waymart's compliance with DOC policies to ensure inmates are enrolled in programming in a timely manner so they are "not penalized at parole time." *Id.* He also requests contact with his daughter Amanda. *Id.*

IV. *Discussion*

    A. *Plaintiff Has No Protected Liberty Interest in Visitation with His Victims*

Alex contends that Superintendent Nish's decision not to grant him visitation with a victim of his past sex offenses, who is also his daughter, violates his due-process and First Amendment rights as a father. The court disagrees.

Although "many of the liberties and privileges enjoyed by other citizens must be surrendered by [a] prisoner," *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167, 156 L.Ed.2d 162 (2003), prisoners retain a right to familial associations during incarceration. *Id.* However, this right is not absolute. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989)(denial of

---

[4] Alex's daughter is not a named plaintiff in this action, and she is no longer a minor. Alex does not have standing to argue any alleged constitutional violation of her rights.

prison access to a particular visitor is "well within" nature of restriction associated with prison sentence). Neither convicted prisoners nor their family members have an inherent constitutional right to visitation. *Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D. Pa.), *aff'd*, 980 F.2d (3d Cir. 1992). Visitation is a privilege subject to revocation at the discretion of the Superintendent when necessary to ensure security and to maintain order in the institution. "Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion." *Id.* at 934. "Additionally, there are no Pennsylvania regulations expressly mandating a right to prison visitation." *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 352 (M.D. Pa. 2004)(citing *Africa v. Vaughn*, 1996 WL 65445, at *1 (E.D. Pa.)). Accordingly, when balancing the interest in maintaining family relationships with the reduction in liberty required by confinement, the Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members. *Overton*, 539 U.S. at 131, 123 S.Ct. at 2167.

The United States Supreme Court has applied the test enunciated in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to determine whether a prison policy that impinges upon a prisoner's visitation rights are constitutionally sound. *See Overton*, 539 U.S. at 132, 123. S.Ct. at 2167-68. The inquiry presented is whether the restriction on visitation with a family member, who is also a victim of Alex's sex offense(s), is reasonably related to a legitimate penological interest. *Id.*, 539 U.S. at 131-32, 123 S.Ct. at 2167-68. ("[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the

-8-

prison context.") (internal citations omitted). Four factors are relevant to this analysis: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether the prisoner retains alternatives for exercising the right; the impact that accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Id.*

Defendants contend that Alex does not have a constitutionally vested right to visitation or other contact with his daughter Amanda. Alex's opposition brief does not point to any identifiable authority for this right. Rather, he relies on the fact that the criminal court which sentenced him did not take away his parental rights, and questions SCI-Waymart staff's ability to do so. Doc. 20 at R. 3. He suggests that while the DOC Handbook qualifies his daughter as a "prohibited visitor" as she is a victim of the inmate, he notes that the Facility Manager, in this case Superintendent Nish, may approve the visits but is only refusing to do so because he is a sex offender. *Id.* at R. 2. Alex does not argue a violation of a constitutional right, but challenges Superintendent Nish's exercise of his discretionary powers on the visitation issue, something Alex himself recognizes as a "privilege." *See* Doc. 1 at R. 4.

A prison policy that restricts contact between a sex offender and his victim is clearly rationally related to the legitimate interest of protecting victims and their families from unwanted communication and harassment by prisoners when a victim requests such protection. *See Overton*, 539 U.S. at 132-33, 123 S.Ct. at 2168 (policy designed to protect children from abuser or misconduct that could occur during their visit).

Additionally, it is logical that where prison officials believe a sex offender's contact with any particular individual would not promote treatment or rehabilitation efforts, visitation with particular individuals should be prohibited. *See Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009); *Wirsching v. Colorado*, 360 F.3d 1191, 1199-1200 (10th Cir. 2004)(prison "officials had identified two legitimate penological interests to support the ban on the inmate's visits with his children: the protection of the children themselves and the furthering of rehabilitation of convicted sex offenders like [the plaintiff]"); see *also Odenwalt v. Gillis*, 327 F. Supp. 2d 502 (M.D. Pa. 2004). Alex alleges that he is being denied contact with his daughter because she is a victim of his present or past offense. Alex admits that she is a victim of his criminal sexual misconduct. Thus, the policy in question (and Superintendent Nish's decision) on its face is rationally related to several obvious legitimate penological interests.

As for the second prong, the Court does not find Alex without alternative means to maintain a relationship with his daughter, if she wants one.[5] Alex argues the problem is he cannot let Amanda know that she should contact prison officials if she wishes contact with him because he has been ordered not to communicate with her. (Doc. 20 at R. 15). Alex faults defendants (Secretary Beard, Superintendent Nish and others) for failing to contact Amanda and confirm her interest in maintaining a relationship with Alex while in prison.

---

[5] Documents submitted by Alex suggest that his ex-wife has obtained a Protection From Abuse Order precluding his contact with her or his other daughter as the other child is also alleged to be one of Alex's victims. *See* Doc. 20 at R. 29. Alex's ability to contact his other daughter is not at issue in this case.

Contrary to Alex's assertion, defendants need not do so and their failure to do so does not leave Alex without alternatives to indirectly contact Amanda. First, if Amanda wants contact with him, she can contact prison officials requesting contact.[6] Second, Alex can contact someone else he is allowed to communicate with and ask them to relay a message to Amanda. In this regard, the Court notes that Alex has identified his brother, and son-in-law (Amanda's husband), as individuals with whom he is permitted communication. *See* Doc. 20 at R. 12 and R. 14. While this alternative may not be preferred by Alex, it is available. *Overton*, 539 U.S. at 135, 123 S.Ct. at 2169.

Finding a rational connection between the policy and the alleged constitutional right, the court must now move to the two remaining *Turner* factors. The Court must consider what, if any, "impact the accommodation of the asserted associated right would have on guards, other inmates, the allocation of prison resources, and the safety of visitors." *Id.* Alex is currently incarcerated at a facility which treats sex offenders, SCI-Waymart. His treatment team will not approve him "for contact with your victim," his daughter Amanda. *See* Doc. 20 at R. 54. Alex was advised that he "will be treated like everyone else on this unit and there will not be any exception." *Id.* Alex does not suggest that other sex offenders are permitted contact with their victims. The reality, however, of accommodating Alex's unilateral request to visit with Amanda, would create a "ripple effect" among the sex offender population and disturb the traditional deference

---

[6] However, even if such actions are taken, the prison officials in furtherance of Alex's rehabilitation, may elect to deny such contact. *See Wirsching*, 360 F.3d at 1199-1200.

afforded prison administrators in making such regulatory decisions and risk potential harm to already traumatized victims of sex offenders and undermine therapeutic treatments. *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262; *see also Beard v. Banks*, 548 U.S. 521, 528, 125 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). Finally, there does not appear to be an easy or readily identifiable alternative to the prison policy or Superintendent Nish's and the treatment team's decision.

Based on the above discussion, as Alex does not have a liberty interest in having visitation privileges with his former victim and daughter, the denial of such privileges cannot be found to be in violation of the Due Process Clause or the First Amendment. Because Alex has not been deprived of a cognizable constitutional right, he fails to state a claim based on the denial of visitation with his victim/daughter. To the extent any such familial right is found, Superintendent Nish's decision to preclude Alex from having contact with victims of his sex offenses is reasonably related to multiple legitimate penological interests.

    B.    *No Right to Therapeutic Programming*

A prisoner does not have a constitutional right of access to particular treatment programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (indicating that an inmate has no legitimate statutory or constitutional entitlement in eligibility for rehabilitative program sufficient to invoke due process when eligibility decision is discretionary with prison officials). The Third Circuit has likewise held that there is no constitutional right to a prisoner's participation in a drug

treatment or other rehabilitative program. *See Abraham v. Del. Dep't Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009). "It is well-established that those individuals serving criminal sentences have no constitutional right to rehabilitation while in prison." *McFadden v. Lehman*, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997)(internal citations omitted).

Alex claims that although his minimum sentence date is approaching he has been unconstitutionally denied enrollment in a parole-recommended SOP at SCI-Waymart. Prison officials have clearly advised Alex of the huge number of inmates who wish enrollment in the SOP which only has limited space. According to Alex's submissions, his minimum sentence date is in December 2010 and he is presently on the SOP wait list. Based on the above, Alex's claim of a constitutionally protected right to participate in a sex offender treatment program has no legal basis.

    C.    *No Right to Parole*

The authority to grant parole under Pennsylvania law is vested solely in the Pennsylvania Board of Probation and Parole. *See* 61 Pa. Con. Stat. § 6132. The granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally protected liberty interest that is inherent to the Due Process Clause. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); *Thorpe v. Grillo*, 80 F. App'x 215, 219 (3d Cir. 2003). Likewise, Pennsylvania state law does not create a liberty interest for state inmates to be released prior to the expiration of a valid sentence. *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996)(parole is not a constitutionally protected liberty interest under Pennsylvania law);

-13-

*Rogers v. Pa. Bd. of Probation and Parole*, 555 Pa. 285, 292, 724 A.2d 319, 323 (Pa. 1999)("Parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence."); *see also Weaver v. Pa. Bd. of Probation and Parole*, 688 A.2d 766, 770 (Pa. Commw. 1997)(under Pennsylvania law, parole is a favor, and the prisoner has no protected liberty interest in being released before a legitimately imposed sentence has expired). Thus, because Alex does not have a liberty interest in being released prior to his maximum sentence date, Alex cannot establish a due-process violation due to the denial of rehabilitative programming, which may or may not impact his parole eligibility.

V.  *Conclusion*

For the reasons explained above, the court will grant defendants' motion to dismiss Plaintiff's Complaint as he has no right to unfettered contact with the victim of his crime, or a liberty interest in therapeutic programming or release prior to the expiration of his maximum sentence. The court will dismiss the Complaint without leave to amend as any amendment to the Complaint would be futile as Alex cannot cure the identified defects.

The Court will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 6, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY J. ALEX, :
:
    Plaintiff :
: CIVIL NO. 1:CV-09-1711
  vs. :
: (Judge Caldwell)
JEFFREY A. BEARD, SECRETARY :
OF CORRECTIONS, *et al.*, :
:
    Defendants :

*O R D E R*

AND NOW, this 6th day of April, 2010, it is ordered that:

    1. Defendants' Motion to Dismiss (doc. 13) is granted.

    2. The Clerk of Court shall close this case.

    3. An appeal from this order is deemed frivolous and not taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge